| | |
|---|---|
| CHERYL RIPLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>   v.<br><br>TRINITY HEALTH CORPORATION, TRINITY HEALTH OF NEW ENGLAND CORPORATION, INC., and SAINT FRANCIS HOSPITAL AND MEDICAL CENTER,<br><br>        Defendant. | Case No. _____<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND CONNECTICUT WAGE AND HOUR LAW; CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br><br>**DEMAND FOR JURY TRIAL** |

## COLLECTIVE AND CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
## AND CONNECTICUT WAGE AND HOUR LAW

Plaintiff Cheryl Ripley ("Plaintiff") on behalf of herself and all those similarly situated, alleges as follows against Defendants Trinity Health Corporation, Trinity Health of New England Corporation, Inc., and Saint Francis Hospital and Medical Center ("Defendants" or "Trinity Health"):

### INTRODUCTION

1.      Plaintiff brings this class and collective action on behalf of herself and other similarly situated individuals who have worked for Trinity Health in patient care roles such as nursing staff, nurse aides, nurse assistants, and other non-exempt hourly patient care positions[1] and have been subject to Defendants' policy and practice of deducting time from recorded hours for meal periods. Throughout the relevant time period, Plaintiff and similarly situated patient care staff have been denied payment for all hours worked, including overtime in violation of the

---

[1] While the precise job titles may differ, Plaintiff hereinafter uses the term "patient care staff" interchangeably in referencing any of these similarly situated employees.

FLSA and Connecticut law, and have been denied meal periods that comply with Connecticut law. This case implicates the longstanding policy and practice of Trinity Health, which fails to properly compensate non-exempt employees for work performed during meal periods, for work performed while "off-the-clock," and for missed meal periods.

2.      Defendants do not provide bona fide meal periods for their staff who are responsible for patient care. Patient care staff who work for Defendants are required to remain responsible for patient care throughout their shift and are expected to perform duties while "off-the-clock." Instead of making patient care staff clock out for their meal periods, and then clock back in at the end of a meal period, Defendants assume patient care staff are able to find a 30-minute block of time to enjoy a bona fide meal period and therefore automatically deduct 30 minutes from patient care staffs' shifts for a meal period. However, patient care staff do not typically find time for their meal periods, and when they do, patient care staff remain on duty and are continuously subject to interruption during meal time to perform patient care duties. Defendants' policies and practices result in patient care staff being responsible for patient care throughout their shift, even when they attempt to have a bite to eat.

3.      Defendants' policies and practices deny patient care staff wages due under the Fair Labor Standards Act and Connecticut law. Under these policies and practices, Defendants require non-exempt patient care staff to remain on duty and subject to interruptions during their meal breaks. Patient care staff are denied pay for work performed during these on-duty meal periods.

4.      In addition, Plaintiff and Collective and Class members (as those terms are defined below) are required to work additional time outside of their scheduled shifts to keep up with the demands of the job. Defendants are aware that Plaintiff and Collective and Class members perform this off-the-clock work, but failed to pay them at the applicable hourly and overtime rates for this work time. This practice likewise violated and continues to violate the FLSA and Connecticut state law.

5.      Defendants, including all of the hospital and clinic facilities under Defenedants' ownership, violated and continue to violate the FLSA and Connecticut law by knowingly and willfully permitting Plaintiff and Collective and Class members to perform work and/or remain on duty during meal breaks, subjecting them to interruptions during those times. Plaintiff and Collective and Class members also perform work before clocking in and after clocking out for which they were not compensated. Defendants received value from the work performed by Plaintiff and Collective and Class members during their meal periods and while "off-the-clock" without compensating them for their services. Defendants willfully, deliberately, and voluntarily failed to pay Plaintiff and Collective and Class members for work performed.

6.      Defendants' conduct violated and continues to violate the FLSA because of the mandate that non-exempt employees, such as Plaintiff and the Collective members, be paid at one and one-half times their regular rate of pay for all hours worked in excess of forty within a single workweek. *See* 29 U.S.C. § 207(a).

7.      Defendants' conduct violated and continues to violate Connecticut state law including  the Connecticut Minimum Wage Act, CGSA § 31-58 *et seq.*; Connecticut overtime statutes, CGSA §§ 31-60 and 31-68; Connecticut meal period statutes, CGSA § 31-51ii; Connecticut record-keeping statutes, CGSA § 31-66; and Connecticut unpaid wages statutes, CGSA § 31-71c.

8.      In order to remedy the sweeping practices that Defendants have integrated into their time tracking and payroll policies, and which have deprived Plaintiff, Class, and Collective members of their lawfully-earned wages, Plaintiff files this action to recover on behalf of herself and Collective and Class members all unpaid wages, compensation, penalties, and other damages owed to them under the FLSA as a 29 U.S.C. § 216(b) collective action, and under Connecticut state law as a class action under Federal Rule of Civil Procedure 23.

## SUBJECT MATTER JURISDICTION AND VENUE

9.      This court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States,

specifically the FLSA, 29 U.S.C. § 201, *et seq.* This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendants employ numerous patient care staff who reside in this district, and a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district. Defendant is subject to personal jurisdiction here.

## PARTIES

11.     Plaintiff Charyl Ripley is an individual residing in Simsbury, Connecticut. Ms. Ripley was employed as a Certified Nursing Assistant (CNA) by Defendants at Saint Francis Hospital and Medical Center in Hartford, Connecticut from approximately 2001 to January 2019.

12.     The FLSA Collective members are people who are or who have been employed by Defendants in non-exempt patient care roles, such as nursing staff, nurse aides, nurse assistants, and other similar hourly non-exempt patient care positions in the United States within the three years preceding the filing of this Complaint (collectively referred to herein as "Collective Members").

13.     The Connecticut Class members are all people who are or who have been employed by Defendant in non-exempt patient care roles, such as nursing staff, nurse aides, nurse assistants, and other similar hourly non-exempt patient care positions in the State of Connecticut that have been employed by Defendant within the two years preceding the filing of this Complaint (collectively referred to herein as "Class Members").

14.     Upon information and belief, Defendant Trinity Health Corporation is an Indiana nonprofit corporation, with its headquarters in Livonia, Michigan, doing business in Connecticut. Trinity Health is a health system operating 93 hospitals in 22 states, including in Connecticut. Pursuant to Connecticut General Statute § 52-57(c), Trinity Health may be served with process by serving its president and chief operating officer, Michael A. Slubowski at 20555 Victor Parkway, Livonia, Michigan 48152.

15.     Upon information and belief, Trinity Health of New England Corporation, Inc. is a non-profit corporation doing business in Connecticut, and with Trinity Health Corporation operates a number of healthcare facilities in Connecticut and surrounding states. Upon information and belief, Trinity Health of New England Corporation, Inc. jointly owns and operates Saint Francis Hospital and Medical Center, either in whole or in part, with Trinity Health Corporation. Trinity Health of New England Corporation, Inc. may be served with process by serving its registered agent, C T Corporation System at 67 Burnside Avenue, East Hartford, Connecticut 06108-3408.

16.     Upon information and belief, Saint Francis Hospital and Medical Center is a hospital located in Hartford, Connecticut. Upon information and belief, Saint Francis is owned and operated by Trinity Health Corporation and Trinity Health of New England Corporation, Inc.. Pursuant to C.G.S.A. § 52-57(c), Saint Francis Hospital may be served with process by serving its president, John F. Rodis, M.D. at 114 Woodland Street, Hartford, Connecticut 06105.

17.     Defendants jointly own and operate hospitals and clinics, including Saint Francis Hospital and Medical Center, throughout the United States.

18.     At all material times, Defendants have been employers within the meaning of the FLSA under 29 U.S.C. § 203(d) and within the meaning of the CGSA § 31-58.

19.     At all material times, Defendants have been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

20.     Plaintiff and Collective members were and are employees of Defendants within the meaning of 29 U.S.C. § 203(e) and CGSA § 31-58.

21.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because Defendants had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

22.     Defendants acted as joint employers of Plaintiff and Collective and Class members because all Defendants jointly, directly or indirectly, controlled the employment

terms, pay practices, timekeeping practices, and daily work of Plaintiff and Collective and Class members.

23.     Defendants have had, and continue to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

24.     In addition to Plaintiff, Defendants have employed numerous other employees, who like Plaintiff, are patient care staff engaged in interstate commerce. Further, Defendants are engaged in interstate commerce since they order supplies across state lines, conduct business deals with merchants across state lines, and process patient credit cards with banks in other states.

25.     At all material times, Plaintiff and Collective and Class members were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

## FACTS

26.     Defendant Trinity Health operates a network of hospitals and clinics that provide healthcare services across the United States, including medical care facilities located in Alabama, California, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, and South Dakota.

27.     Saint Francis Hospital and Medical Center is one of the hospitals within Defendants' healthcare network, and is owned and operated by Trinity Health Corporation and Trinity Health of New England Corporation, Inc.

28.     Defendants jointly employ thousands of hourly non-exempt workers similarly situated to Plaintiff.

29.     Defendants' payroll policy and practice does not compensate hourly-paid patient care staff for work performed during meal periods. Defendants' automatic time deduction policy and practice deducts 30 minutes from patient care staff shifts for a meal period based on the assumption that patient care staff are able to find a 30-minute block of time to enjoy a bona fide

meal period. However, in practice, patient care staff involved in patient care are not permitted to take a 30-minute uninterrupted and bona fide meal period or rest breaks due to the demands of their jobs during the majority of their shifts. In the rare instances where they attempt a meal break, they remain on duty in that they are required to respond to calls from their patients, doctors, patients' families, other patient care staff and hospital staff, attend to the normal demands of the job, and otherwise respond to emergencies. This policy applies to all hourly-paid, non-exempt patient care staff who are responsible for patient care.

30.     Defendants encourage interruptions to patient care staff meal periods by requiring patient care staff to carry an electronic communication device with them at all times, so that they may receive calls/requests from their patients and hospital personnel. Patient care staff are required to respond to these calls, even if they occur during meal periods.

31.     Plaintiff worked as a non-exempt nursing assistant ("CNA") for Defendants between 2001 to January 2019, and at the time her employment ended she was  paid a rate of $18 per hour for her services. As a CNA, Plaintiff's primary responsibilities included: providing patient care and monitoring, assisting nurses and doctors, interacting with other hospital employees and visitors, monitoring patient test results, and responding to emergency situations.

32.     Collective and Class members were and are employed by Defendants and performed work materially similar to Plaintiff.

33.     Plaintiff and Collective and Class members reported to a hospital or clinical facility owned, operated, or managed by Defendants to perform their jobs.

34.     Plaintiff and Collective and Class members performed their jobs under Defendants' supervision and using materials and technology approved and supplied by Defendants.

35.     Plaintiff and Collective and Class members were required to follow and abide by common work, time, pay, meal and rest break, and overtime policies and procedures in the performance of their jobs.

36.     At the end of each pay period, Plaintiff and Collective and Class members received wages from Defendants that were determined by common systems and methods that Defendants selected and controlled.

37.     Defendants paid Plaintiff and Collective and Class members on an hourly rate basis.

38.     Plaintiff worked more than forty hours in at least one workweek during the three years before this Complaint was filed. On average, Plaintiff worked 12.5 hours each shift and between three-to-four shifts per week. Plaintiff typically worked more than 40 hours of clocked-in time in a workweek at least once per month, not including the time worked during meal periods and while off-the-clock.

39.     Upon information and belief each Collective and Class member worked more than forty hours in at least one workweek during the three years before this Complaint was filed.

40.     When Plaintiff and Collective and Class members worked more than forty hours in a workweek, Defendants failed to pay them one and one-half times their regular hourly rate for all hours worked due to Defendants' failure to include time worked "off-the-clock" including during meal periods in the total hours of worked in a given work week. This unpaid meal period time is compensable under the FLSA and Connecticut law because (1) Plaintiff and Collective and Class members were not completely relieved of their duties, (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, or (3) they entirely skipped meal periods due to work demands.

41.     Throughout the relevant time period, Plaintiff and Collective and Class members were subjected to Defendant's time, pay, meal break, and overtime policies and practices. Plaintiff and Collective and Class members routinely performed work during their entire shift, were subject to interruptions during attempted meal breaks, and in fact were interrupted or denied meal breaks on a regular basis. Plaintiff and Collective and Class members also

performed work while "off-the-clock" with Defendants' knowledge and were denied compensation for the time they spent engaged in this work.

42.     Plaintiff's and Collective and Class members' "off-the-clock" work included assisting patients and patients' families, assisting hospital personnel with various tasks, responding to emergencies, and performing other various tasks before clocking in and after clocking out for the day. Plaintiff and Collective and Class members were not compensated for this work performed outside of their recorded hours.   On average, Plaintiff worked approximately 10-15 additional minutes of work while off-the-clock during each shift, not including work performed during meal break periods.

43.     Defendants expected and required Plaintiff and Collective and Class members to be available to work during their entire shifts, even during any attempted meal or rest breaks. These 30-minute intervals of deducted time constitute compensable time under the FLSA which requires that employers compensate employees for all time worked. They also constitute compensable time under state law because CGSA § 31-51ii provides that employees who work at least seven and a half hours are entitled to a meal period of at least 30 consecutive minutes before the last two hours of work.

44.     In addition, Defendants routinely deny Plaintiffs and other patient care staff timely and compliant off-duty meal periods. Specifically, Defendants routinely refuse to authorize, permit, and/or make available to patient care staff timely and compliant thirty-minute meal periods as required by law. Furthermore, Defendants require patient care staff to work in excess of 7.5 or more consecutive hours per day, but do not authorize, permit, and/or make available to them a thirty-minute meal period between the first two and last two hours of their shift, as required by Connecticut law.

45.     To the contrary, Defendants automatically deduct 30 minutes from patient care staffs' time records for meal breaks during which patient care staff are still available to respond to urgent or unusual conditions, and subject to being interrupted, at all times. In other words, Defendants alter patient care staffs' time records to show a meal period that was never taken or

that otherwise failed to truly relieve patient care staff of all duties. These meal periods are uncompensated.

46.     Beyond Defendants' failure to authorize or permit meal breaks, patient care staff's schedules were too busy, patient care demands were too high, and Defendants' pressure to complete job assignments while being understaffed was too constant, for patient care staff to take compliant meal breaks. Defendants monitor Plaintiff and other patient care staff throughout the day, including by electronic communication device, directing them to go from patient to patient without breaks.

47.     As a result, the time worked by Plaintiff and other patient care staff during their meal periods goes unrecorded and uncompensated. This violates both the FLSA, when it occurs during weeks in which Plaintiff and putative Collective members work 40 hours in a workweek, and Connecticut law. This also violates Connecticut record keeping statutes.

48.     Defendants do not provide putative Class members, including Plaintiff, accurate itemized wage statements as required by Connecticut record-keeping laws. The wage statements patient care staff are provided are not accurate because they do not reflect the actual hours worked by Plaintiff and putative Class members. The wage statements do not contain off-the-clock work or time that should be compensable during interruptable meal breaks.

49.     Defendants do not provide putative Class members, including Plaintiff, with full payment of all wages owed at the end of employment. As these workers are owed for off-the-clock work, unpaid overtime, and unpaid non-overtime regular wages when their employment ends, and these amounts remain unpaid under Defendants' policies and practices, Defendants fail to pay all wages owed in violation of Connecticut law.

50.     Defendants have employed hundreds of people similarly situated to Plaintiff during the three-year period prior to the filing of this Complaint.

51.     Defendants' method of paying Plaintiff and Collective and Class members was willful, and was not based on a good faith and reasonable belief that their conduct complied with either the FLSA or Connecticut law.

52.     Defendants' common course of wage-and-hour abuse includes routinely failing to maintain true and accurate records of the hours worked by Collective and Class members. In particular, Defendants have failed to record hours that Plaintiff and Collective and Class members worked during missed meal and rest breaks as well as hours worked off the clock.

53.     Defendants' conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

## FLSA COLLECTIVE ACTION ALLEGATIONS

54.     Plaintiff brings this Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the following class of individuals:

> **All current and former hourly, non-exempt employees, responsible for patient care, including but not limited to nursing staff, nurses, nursing aides, nursing assistants, technicians, or other non-exempt hourly employees providing patient care employed by Defendants nationwide during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").**

55.     Defendants have not and do not compensate these employees for "off-the-clock" work as described above, including work performed during unpaid meal breaks.

56.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because her claims are similar to the claims possessed by the Collective members.

57.     Plaintiff has actual knowledge that Collective members have been denied compensation for time worked, including meal breaks worked or interrupted and "off-the-clock" work. In addition, Plaintiff has actual knowledge that Collective members have also been denied overtime pay for this work and would therefore likely join this collective action if provided a notice of their rights to do so, together with a clear statement that opting to join such an action would not result in termination or other forms of retaliation.

58.     Plaintiff is similarly situated to Collective members. Like Plaintiff, Defendants subjected Collective members to Defendants' common practice, policy, or plan of refusing to pay overtime for all work performed in clear violation of the FLSA.

59.     Other patient care staff similarly situated to Plaintiff work, or have worked, for Defendants but were not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty per workweek for meal breaks during which they were not completely relieved of their duties that were interrupted, interruptible, or entirely missed due to work demands. Patient care staff similarly situated to Plaintiff also performed compensable work for Defendants while "off-the-clock," and were not paid overtime at the rate of one and one-half times their regular hourly rate for those "off-the-clock" hours when those hours exceeded forty per workweek.

60.     Although Defendants permitted and/or required Collective members to work in excess of forty hours per workweek, Defendants denied them full compensation for their hours worked over forty for meal breaks that were interrupted due to work demands and for "off-the-clock" work.

61.     Collective members perform or have performed the same or similar work as Plaintiff involving patient care.

62.     Collective members regularly work or have worked in excess of forty hours during a workweek.

63.     Collective members are not exempt from receiving overtime compensation under the FLSA.

64.     Defendants' failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices, and did not depend on the personal circumstances of FLSA Collective members.

65.     Although Plaintiff and Collective members may have different job titles and/or work in different hospital facilities, this action may be properly maintained as a collective action on behalf of the defined class because, throughout the relevant time period:

a. Defendants maintained common scheduling systems and policies with respect to Plaintiff and Collective members, controlled the scheduling systems and policies implemented throughout their facilities and retained authority to review and revise or approve the schedules assigned to Plaintiff and Collective members;

b. Defendants maintained common timekeeping systems and policies with respect to Plaintiff and Collective members;

c. Defendants maintained common payroll systems and policies with respect to Plaintiff and Collective members, controlled the payroll systems and policies applied to Plaintiff and Collective members, and set the pay rates assigned to Plaintiff and Collective members; and

d. Defendants controlled the meal break work policies and practices at issue in this litigation and had the ability to deprive Plaintiff and Collective members of wages owed for meal break work they performed.

66. The specific job titles or precise job responsibilities of each Class member do not prevent collective treatment.

67. Collective members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek, including for interrupted, on-duty, or missed meal breaks and for hours worked "off-the-clock."

68. Although the exact amount of damages may vary among Collective members, the damages for Collective members can be easily calculated, summed, and allocated based on a simple formula.

69. Plaintiff and Collective members' claims arise from a common nucleus of operative facts; namely, the continued and willful failure of Defendants to comply with their obligation to legally compensate their employees. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Collective members. Defendants had a plan, policy or practice of not paying Plaintiff and Collective members for interrupted,

interruptible, or missed meal breaks, as well as work performed for Defendants while "off-the-clock."

70.     As such, the Collective of similarly situated Plaintiffs is properly defined as stated above. Plaintiff estimates the Collective, including both current and former employees over the relevant time period, will include upwards of 100 people or more. The precise number of Collective members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). The names and addresses of the Collective members are discoverable from Defendant's records.

## RULE 23 CLASS ACTION ALLEGATIONS

71.     Plaintiff brings causes of action as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). The Connecticut Class that Plaintiff seeks to represent is defined as follows:

> **All current and former hourly, non-exempt employees, providing patient care, including but not limited to nursing staff, nurses, nursing aides, nursing assistants, technicians, or other non-exempt hourly employees providing patient care employed by Defendant in Connecticut any time starting two years prior to the filing of this Complaint until resolution of this action.**

72.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

73.     <u>Numerosity</u>:  The potential members of the class are so numerous that joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of Connecticut Class members exceeds 50. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Connecticut Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Connecticut Class will be determined from Defendants'

records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Connecticut Class and Defendants.

74.     Commonality:  There are questions of law and fact common to Plaintiff and the Connecticut Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

    i.   Whether Defendants paid Plaintiff and Class members on an hourly basis;

    ii.   Whether Defendants fail to compensate putative Class members for all hours worked, in violation of CGSA § 31-71c;

    iii.   Whether Defendants failed, and continue to fail, to properly pay overtime compensation, at one and one-half times the regular rate of pay, to putative Class  members in violation of CGSA §§ 31-60 and 31-68;

    iv.   Whether Defendants failed, and continue to fail, to authorize and permit, make available, and/or provide putative Class members with timely meal periods which they are entitled in violation of CGSA § 31-51ii;

    v.   Whether Defendants had, and continue to have, a policy and/or practice of requiring putative Class members to be in the control of, spend time primarily for the benefit of, and work for Defendants off-the-clock and without compensation;

    vi.   Whether Defendants failed, and continue to fail, to comply with all record keeping requirements in violation of CGSA § 31-66;

    vii.   Whether Defendants failed, and continue to fail, to provide Plaintiff and Class members with wage statements compliant with Regulations of Connecticut State Agencies § 31-60-12;

viii.  Whether Defendants are liable for liquidated damages to Plaintiff and putative Class members under CGSA § 31-68;

ix.  Whether Defendants are liable to for statutory civil penalties under CGSA § 31-68; and

x.  The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

75.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Connecticut Class. Defendants' common course of conduct in violation of law as alleged herein caused Plaintiff and Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

76.  <u>Adequacy of Representation</u>:  Plaintiff seeks relief for state law violations perpetrated by Defendants. In that sense, Plaintiff does not have any conflicts of interest with other Class members and will prosecute the case vigorously on behalf of the Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including wage and hour cases. Plaintiff will fairly and adequately represent and protect the interests of the Class members.

77.  <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each proposed Class member has been damaged and is entitled to recovery by reason of Defendants' illegal policies and/or practices. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

78.  In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying

adjudication with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

79. If each individual Class member were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Class with Defendants' vastly superior financial legal resources.

80. Requiring each individual Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Class members who would be disinclined to pursue these claims against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

**FIRST CAUSE OF ACTION**
**Violations of 29 U.S.C. § 207**
**Failure To Pay Overtime Compensation For**
**Improper Automatic Meal Break Time Deductions**
**(FLSA Collective Action)**

81. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

82. Plaintiff and Collective members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

83. The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week.

84. Throughout the relevant time period, Defendants expected and required Plaintiff and Collective members to be available to work and/or to be on duty during their promised meal breaks. Plaintiff and Collective members also performed work off-the-clock for which they were not compensated.

85.    Plaintiff and Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of wages owed for work they performed and from which Defendant derived a direct and substantial benefit.

86.    Defendants cannot satisfy their burden of proof to demonstrate Plaintiff and Collective members received a bona fide meal period for every 30 minutes deducted from their wages automatically.

87.    Defendants violated and continue to violate the FLSA when they failed to pay Plaintiff and Collective members for meal breaks under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and Collective members have suffered a loss of wages.

88.    Defendants' failure to pay overtime to Plaintiff and Collective members, in violation of the FLSA, was willful and not based on a good-faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

89.    Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

90.    Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

### SECOND CAUSE OF ACTION
**Violations of 29 U.S.C. § 207**
**Failure To Pay Overtime Compensation For "Off-The-Clock" Work**
**(FLSA Collective Action)**

91.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

92.    Throughout the relevant time period, Defendants suffered and/or permitted Plaintiff to work additional time outside of her recorded shift for work-related tasks. These tasks

included, but were not limited to, checking on patients, assisting patients and patients' families, assisting hospital personnel, and responding to emergencies.

93.    Plaintiff was actively discouraged from logging time outside the parameters set by Defendants. However, due to the demands of the job, Plaintiff routinely performed work-related tasks outside of her scheduled shift, before she clocked in and after she clocked out. Upon information and belief, Defendants treated Collective members similarly with respect to "off-the-clock" work.

94.    Accordingly, consistent with the policies and procedures set up by Defendant, Plaintiff and Collective members performed work for which they were not compensated. Defendants' policies and practices favored Defendants at the expense of Plaintiff and Collective members.

95.    Defendants violated and continue to violate the FLSA when they failed to pay Plaintiff and Collective members for "off-the-clock" work under 29 U.S.C. § 207 as a non-exempt employee. Because of these violations, Plaintiff and Collective members suffered wage losses during weeks where the total time worked (logged and unlogged) exceeded forty hours.

96.    Defendants' failure to pay overtime to Plaintiff and Collective members, was willful and not based on a good-faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

97.    Because of Defendants' willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

98.    Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

### THIRD CAUSE OF ACTION
**Failure to Pay for Overtime Wages Pursuant to the Connecticut Minimum Wage Act, CGSA §§ 31-60 and 31-76c**
**(On Behalf of the Connecticut Class)**

99.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

100.    Pursuant to CGSA § 31-76c, Defendants were and are required to pay Plaintiff and the Class members one and one-half times their regular rate of pay for all hours worked in excess of forty in a given workweek.

101.    During the applicable Class period, Defendants knowingly and intentionally implemented an automatic time deduction scheme that deprived Plaintiff and Class members of compensation for thirty minutes from each shift worked during which Plaintiff and Class members were actually working or were otherwise subject to being interrupted by virtue of their ethical code and/or Defendants' internal policies and practices that patient care staff must be responsive to patient needs.

102.    During the applicable Class period, Defendants knowingly and intentionally allowed and required Plaintiff and Class members to perform work for the benefit of Defendants while they were off-the-clock, that is prior to clocking in and after clocking out. Defendants did not, and do not, pay Plaintiff and Class members for this off-the-clock time, including during workweek where Plaintiff and Class members worked more than 40 hours in a given work week.

103.    Plaintiff and Class members are entitled to recover unpaid overtime under Connecticut law, and Plaintiff and Class members are also entitled to declaratory relief stating Defendants violated the statute, and continue to violate the statute, by failing to compensate Class members for "off-the-clock," including by incorporating and continuing to utilize the automatic time deduction policy as described above.

104.    Defendants willfully engaged in and continue to engage in a policy and practice of not compensating Plaintiff and putative Class members for all hours worked or spent in its control.

105.    As a proximate result of the aforementioned violations, Plaintiff and the Class have been damaged, including sustaining loss of earnings for hours of overtime worked on

behalf of Defendants, in an amount according to proof at time of trial, and coss and attorney's fees, pursuant to CGSA §§ 31-68 and/or 31-72.

**FOURTH CAUSE OF ACTION**
**Failure to Pay All Wages Owed Pursuant to CGSA § 31-71b**
**(On Behalf of the Class)**

106.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

107.    Connecticut law requires each employer to pay weekly, or once every two weeks, all wages, salary or other compensation due to each employee on a regular pay day, designated in advance by the employer using statutorily prescribed methods. *See* CGSA § 31-71b(a)(1).

108.    Defendants regularly require Plaintiff and Class members to work both non-overtime and overtime hours for which Defendants do not compensate them, including time worked during unpaid meal periods and time worked while off-the-clock.

109.    Plaintiff and Class members have worked compensable hours for Defendants without being paid, in violation of the Connecticut law and other applicable law.

110.    Defendants have knowingly and willfully refused to perform their obligations to compensate Plaintiff and the Class members for all wages for compensable work.  As a proximate result of the aforementioned violations, Defendants have damaged Plaintiff and the Class members in amounts to be determined according to proof at time of trial,

111.    Defendants are liable to Plaintiff and the Class alleged herein for the unpaid wages, including non-overtime and overtime wages, twice the amount of such wages in accordance with CGSA § 31-72, as well as reasonable attorneys' fees and costs pursuant to CGSA § 31-72. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

**FIFTH CAUSE OF ACTION**
**Failure to Authorize and Permit and/or Make Available Meal Periods**
**Pursuant to CGSA § 31-51ii**

**(On Behalf of the Class)**

112.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

113.    CGSA § 31-51ii(a) states as follows:

> No person shall be required to work for seven and one-half or more consecutive hours without a period of at least thirty consecutive minutes for a meal. Such period shall be given at some time after the first two hours of work and before the last two hours.

114.    Defendants routinely do not make meal periods available to Plaintiff and Class members. Despite long work days regularly lasting in excess of twelve hours, Plaintiff and Class members are often unable to take a meal break, are often prevented from timely taking a meal break, are subject to interruption during their meal breaks, and are frequently interrupted during their meal breaks.

115.    Defendants have instituted, and continue to utilize, an automatic time deduction policy and practice that removes 30 minutes from Plaintiff and Class members' recorded work time for meal breaks while still requiring them to remain on duty and even though Plaintiff and Class members are routinely denied compliant meal periods.

116.    Despite these statutory requirements, Defendants have knowingly and willfully refused to perform their obligations to authorize and permit and/or make available to Plaintiff and the Class the ability to take the off-duty meal periods to which they are entitled. Defendants' conduct described herein violates CGSA § 31-51ii. Therefore, Plaintiff and the putative Class are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

117.    As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

118.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
**Failure to Pay Wages Upon Termination of Employment Pursuant to CGSA § 31-71c**

119. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

120. Defendant does not provide Class members with their wages when due under Connecticut law after their employment with Defendant ends.

121. CGSA § 31-71c(a) provides:

> Whenever an employee voluntarily terminates his [or her] employment, the employer shall pay the employee's wages in full not later than the next regular pay day, as designated under 31-71b, either through the regular payment channels or by mail

122. CGSA § 31-71c(b) provides:

> When an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day succeeding the day of such discharge.

123. Some of the Class members left their employment with Defendant during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

124. Defendants willfully refused and continue to refuse to pay putative Connecticut Class members all the wages that were due and owing to them, in the form of uncompensated off-the-clock time, overtime, and meal period pay, upon the end of their employment as a result of Defendants' willful failure to provide Plaintiff and the Class members with payment for all hours worked, overtime, and meal breaks. As a result of Defendants' actions, Plaintiff and Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

125. Defendant's willful failure to pay Plaintiff and Class members the wages due and owing them constitutes a violation of CGSA § 31-71c. As a result, Defendant is liable to Plaintiff and Class members for all penalties owing pursuant to CGSA § 31-72, including twice

the full amount of such wages owed, with costs and reasonable attorneys' fees as may be allowed by the Court.

126.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

**SEVENTH CAUSE OF ACTION**
**Declaratory Judgment for Failure to Provide Wage Statements**
**Pursuant to CGSA §§ 31-66 and 31-13a**
**(On Behalf of the Class)**

127.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

128.    Defendants do not provide Plaintiff and Class members with all necessary information on the employees' wage statements as required by Connecticut law.

129.    CGSA § 31-66 requires employers to keep at the place of employment for a period of three years a true and accurate record of the hours worked by, and the wages paid by the employer, to each employee.

130.    CGSA § 31-13a(a) states as follows:

> With each wage payment each employer shall furnish to each employee, in writing or, with the employee's explicit consent, electronically, a
>
> [1] record of hours worked,
> [2] the gross earnings showing straight time and overtime as separate entries,
> [3] itemized deductions and net earnings,
> [4] except that the furnishing of a record of hours worked and the separation of straight time and overtime earnings shall not apply in [to exempt employees] under the Connecticut Minimum Wage Act or the Fair Labor Standards Act.

131.    Defendants do not provide timely, accurate itemized wage statements to Plaintiff and Class members in accordance with CGSA § 31-13a. The wage statements Defendants provide their employees, including Plaintiff and Class members, do not accurately reflect the actual hours worked or the actual gross wages earned.

132.    Plaintiff and the putative Class members are entitled to declaratory relief finding Defendants violated the wage statement requirement of CGSA § 31-13a.

## JURY DEMAND

133.    Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)    An order preventing Defendants from retaliating in any way against Plaintiff and any Collective member who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;

b)    An order designating this action as a collective action on behalf of the Collective and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

c)    Damages and restitution according to proof at trial for all unpaid wages, liquidated damages, and other injuries, as provided by the FLSA and the laws of the State of Connecticut;

d)    For a declaratory judgment that Defendants have violated the FLSA as alleged herein;

e)    For a declaratory judgment that Defendants have violated the FLSA willfully as alleged herein;

f)    For a declaratory judgment that Defendants have violated Connecticut law and public policy as alleged herein;

g)    For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

h)    For an equitable accounting to identify, locate, and restore to all current and former employees the wages they are due, with interest thereon;

i)   For an order awarding Plaintiff, the Collective, the Class, and all aggrieved employees liquidated and compensatory damages, including lost wages, earnings, and other employee benefits, restitution, and all other sums of money owed to Plaintiff, the Collective, and the Class, together with interest on these amounts, according to proof;

j)   For an award of reasonable attorneys' fees as provided by the FLSA, CGSA §§ 31-72 and/or 31-68; and/or other applicable law;

k)   For all costs of suit;

l)   For interest on any damages and/or penalties awarded, as provided by applicable law; and

m)   For such other and further relief as this Court deems just and proper.

Dated: November 14, 2019.

/s/ *John J. Nestico*
John J. Nestico
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
jnestico@schneiderwallace.com

Carolyn H. Cottrell (to be admitted *pro hac vice*)
California Bar No. 166977
Ori Edelstein (to be admitted *pro hac vice*)
California Bar No. 268145
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100; Fax:  (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
*Lead Attorney for Plaintiff*

William M. Hogg (to be admitted *pro hac vice*)
Texas Bar No. 24087733
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
whogg@schneiderwallace.com
*Of Counsel for Plaintiff*